FILED
GREAT FALLS DIV.

IN THE UNITED STATES DISTRICT COURT 2012 MAR 13 PM 4 25

FOR THE DISTRICT OF MONTANA

PATRICK E. DUFFY, CLERK
BY _____
DEPUTY CLERK

GREAT FALLS DIVISION

---

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

vs.

JEREMY LESLIE ADAMS,

Defendant/Movant.

Cause No. CR 09-42-GF-SEH
CV 12-03-GF-SEH

ORDER

---

On January 9, 2012, Defendant/Movant Jeremy Adams ("Adams"), a federal

prisoner proceeding pro se, moved to vacate, set aside, or correct sentence, under 28

U.S.C. § 2255. Adams also filed a request for DNA testing.

## I. Preliminary Screening

The motion is subject to preliminary review to determine whether "the motion

and the files and records of the case conclusively show that the prisoner is entitled to

no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255

Proceedings for the United States District Courts. Review has been conducted.

A petitioner "who is able to state facts showing a real possibility of

ORDER / PAGE 1

constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases; *United States v. Hayman,* 342 U.S. 205, 219 (1952).

## II. Background

On March 23, 2009, a grand jury indicted Adams on one count of sexual abuse, a violation of 18 U.S.C. § 2242(2)(B). Jurisdiction was predicated on the Major Crimes Act, 18 U.S.C. § 1153(a). Indictment (doc. 1). Assistant Federal Defender R. Hank Branom was appointed to represent Adams. Order (doc. 6).

Trial commenced on June 23, 2009. Minutes (doc. 27). To prove the crime, the United States had to show that Adams, an Indian person, knowingly engaged in a sexual act, defined as contact including penetration, even if slight, between his penis and the victim's anus, while the victim was physically incapable of declining participation and communicating any unwillingness to engage in the act, and that the act occurred on the Fort Peck Reservation. Trial Tr. (doc. 63) at 165:13-166:1.

At trial, Laurette Wetsit testified that she was a heavy drinker, drunk about five

days out of seven. Trial Tr. at 57:15-18. On the night of May 11, 2007, she, her boyfriend Delbert Brown, and Adams, her cousin, sat up late, talking and drinking. After both Brown and Adams fell asleep, Wetsit went to bed, fully dressed. While she was lying on her right side, she was awakened by movement in the bed and by pressure and pain in her anus. She could see Brown asleep in front of her. Her pants, socks, and underwear had been removed. She sat up, pushed her arm back and looked back, and Adams was "rolling off the bed." He jumped up, said, "I'm sorry," and hastily attempted to dress himself. Both Wetsit and Brown, who also said he felt the bed moving, testified that they saw Adams in the bedroom with his pants down around his knees and his erect penis exposed. Wetsit said she "scream[ed] at him," and he held his hands up and said, "Don't tell. Don't tell. I'm sorry. I'm sorry." Adams left. Brown said that he and Wetsit sat for a while as he consoled her, and they fell asleep for a while before they went to the hospital. *See* Trial Tr. at 66:3-69:21, 75:13-76:6, 92:17-96:9, 99:13-14.

Nurse Abby Reum testified that she took DNA swabs from Wetsit and attended an examination conducted by Dr. Michael Uphues. The parties stipulated that Dr. Uphues would have testified that he found a maceration, or "a softening or breaking down of the skin on the right side of the anus, but there was no bleeding, tearing, abrasions, or any evidence of penetration and nothing to indicate that there was

forceful penetration." Stipulation (doc. 25) at 2 ¶ 5. Reum testified that it is rare to find injuries in a sexual assault case and there is usually no evidence to show penetration. She said a maceration can result if "the area of skin is kept constantly wet" or can be caused by "a penis penetrating an anus." Trial Tr. at 118:3-17, 121:21-23, 122:7-9.

Nicole Nicklow, a forensic analyst from the FBI laboratory in Quantico, Virginia, testified that she took a DNA sample from inside and outside the fly and crotch area of Adams's pants. She identified three persons' DNA. Wetsit could not be excluded as the contributor of one of the profiles, and Adams could not be excluded as the contributor of another. The amount of Wetsit's and Adams's DNA found on Adams's pants was approximately equal, suggesting rather prolonged contact with the pants by both of them, because "how much DNA we detect on an item of clothing depends on the amount of contact a person has. How much contact with the skin and rubbing there would be." Trial Tr. at 143:19-21; *see also id.* at 139:3-14, 142:13-144:8. In a swab taken from Adams's penis, Nicklow found DNA consistent with Adams's and with another individual, but not enough to determine even whether the individual was male or female. *Id.* at 145:20-25, 149:4-150:1. The parties stipulated that other forensic evidence showed that Wetsit's blood-alcohol concentration would have been about 0.23% at 8:00 a.m. Stipulation (doc. 24) at 3

¶ 8.

On June 24, 2009, the jury returned a verdict of guilty. Verdict (doc. 37).

Before sentencing, Branom withdrew, and attorney Mark Meyers appeared in his place. Order (doc. 45). A presentence report was prepared. The base offense level was 30. There was a two-point enhancement based on the victim's vulnerability. The criminal history category was IV. The advisory guideline range was 168-210 months. Presentence Report ¶¶ 13-21, 40, 61. Adams was sentenced to serve 200 months in prison and twenty years on supervised release. Judgment (doc. 55) at 2-3; Statement of Reasons (doc. 56) (sealed) at 1.

Adams appealed, challenging the sufficiency of the evidence and his sentence. The Court of Appeals affirmed the conviction and sentence on November 9, 2010. Adams's conviction became final on February 7, 2011. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 532 (2003). Adams timely filed the § 2255 motion on December 15, 2011. Mot. § 2255 (doc. 74) at 6, Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

## III. Adams's Allegations

Adams alleges that Branom violated his Sixth Amendment right to the effective assistance of counsel by failing to challenge the prosecution's evidence in certain ways, detailed below. Adams also alleges that the prosecution presented false

evidence, which would have been discovered had counsel performed effectively. Mot. § 2255 at 4 ¶¶ 12A-B, 7-24.

## IV. Analysis

### A. Claims Against Defense Counsel

*Strickland v. Washington*, 466 U.S. 668 (1984), governs claims alleging ineffective assistance of counsel. First, Adams must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Second, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Neither component of the test is established.

### 1. DNA Evidence

Adams challenges the DNA evidence in several respects, but he misrepresents that evidence. DNA was found on the fly or crotch area of his pants, and Adams himself was not excluded as a potential contributor to the DNA found in the penile swab. Trial Tr. at 139:3-6, 141:5-19, 149:21-23. DNA testing does not conclusively identify the contributor, that is, the person who is the source of a strand of DNA. It

excludes non-contributors, and, as to an individual who cannot be excluded, it allows scientists to estimate the probability that the individual is not the contributor. In that sense, DNA evidence is inconclusive and indefinite. Trial Tr. at 134:4-6, 136:15-137:11. Here, there was only a very small chance that Wetsit was not the contributor of one of the DNA strands found on Adams's pants. Trial Tr. at 142:15-24. The DNA evidence corroborated Wetsit's testimony. Branom challenged the DNA evidence as best he could. *E.g.*, Trial Tr. at 146:9-21.

Adams contends that counsel should have sought DNA testing of a pubic hair found on the victim's comforter. Mot. § 2255 at 7. There is no reasonable probability that Adams would have been acquitted if the pubic hair belonged to Adams, Wetsit, Brown, or someone else.

Finally, Branom had no reason to believe the pants that were tested were not Adams's pants. There were no chain of custody issues. Therefore, it was not unreasonable for him not to insist that the prosecution call as a witness every person who received, catalogued, or forwarded the evidence to and from Quantico. As for Adams's right to "request the appearance of . . . the person who actually did the testing of the DNA," Mot. § 2255 at 14, Nicole Nicklow was one of those persons. She testified.

Counsel challenged the DNA evidence to the extent it was possible for him to

do so. Adams shows no defect in his performance and therefore no prejudice. All claims relating to the DNA evidence, Mot. § 2255 at 7, 11-14, 20-22, are denied.

## 2. Prior Statements

Adams makes several claims related to witnesses' statements before trial.

None has merit.

Adams does not identify the source of the victim's prior statements. The Court

will assume, solely for the sake of argument, that they were given under oath. As

described by Adams, at 8:44 a.m. on May 12, 2007, Wetsit said:

> "she woke up and discovered her bra pulled up above her breasts. Wetsit reported she felt pain (as she motioned towards her mid section area of her body," not her anus, her vagina. Wetsit goes on to say "she was lying on her side and discovered Adams lying behind her. Wetsit reported she elbowed and kicked at Adams, knocking Adams off the bed. NOTE: Wetsit does not say Adams had his penis in her anus.

Mot. § 2255 at 8.

In her second statement, again as described by Adams, at 9:37 a.m., Wetsit

said:

> Wetsit says "felt pressure in backside, it didn't feel right and he was inside me. I was lying on my side and he was inside me on my backside. I pushed him off and started screaming at him what are you doing and he said, "I'm sorry, I'm sorry" and took off running out of my room. I finally got him out of my house after about 5 minutes because he was scared I was going to tell. After he left I called my sister and told her what happened and she brought me up here."

*Id.*

Any inconsistency between these statements is not significant. Whether Wetsit initially said she felt pain in her anal or vaginal area, she consistently thereafter said anus. And even if Adams penetrated her vagina instead, he would still be guilty of the crime charged. A reasonable attorney could conclude that bringing this minor discrepancy to the attention of a jury would detract from Adams's assertion that no assault occurred at all.

Adams also contends that Branom should have called Adams's mother to testify that Wetsit's sister, Denise Zimmer, told her, "I wouldn't worry about it, Laurette does this all the time; nothing will come of it." Mot. § 2255 at 8. This statement was inadmissible hearsay. Fed. R. Evid. 801(d)(1)(A).

Adams claims that "[t]he testimony of anyone who took the alleged victim and her boyfriends' [sic] statements was hearsay because none of them were are [sic] the scene when the alleged crime took place." Mot. § 2255 at 8. No one who took statements from Wetsit or Brown testified to those statements at trial.

Counsel's decisions not to use prior statements for impeachment purposes were neither deficient nor prejudicial. All claims relating to prior statements, Mot. § 2255 at 7-8, 11, 14-17, 20, 24, are denied.

### 3. Dr. Uphues and Nurse Reum

Adams claims that Branom should not have stipulated to Dr. Uphues' testimony and either was not told or knew but concealed the fact that the prosecution would call Reum to testify about the cause of Wetsit's maceration. Mot. § 2255 at 9. Adams misrepresents the stipulation. Dr. Uphues did not say penetration did not occur. He said there was "no evidence of penetration" or of the use of force. Nurse Reum's testimony about the possible causes of the maceration was well within the scope of her knowledge as a nurse. Branom reasonably elicited from her the fact that there might be a mundane cause for the maceration; he could not deny the maceration existed.

Adams's reference to Dr. Uphues' finding of menstrual blood in the vaginal vault is irrelevant. Adams was not accused of vaginal rape.

Adams shows no defect in Branom's performance with respect to either Dr. Uphues' or Nurse Reum's reports or testimony. All claims relating to them, Mot. § 2255 at 8-10, 13, 19, 22-24, are denied.

### 4. Wetsit's Alcohol Use and Time of the Assault

Adams attempts draw an exculpatory connection between Wetsit's admitted intoxication and the time the incident occurred. But the parties did not stipulate that the assault occurred at 8:00 a.m. They stipulated that, "*[i]f* the alleged assault took

place at approximately 8:00 a.m.," Wetsit's BAC would have been about 0.23%. Stipulation (doc. 24) at 3 ¶ 8 (emphasis added). If it took place at about 6:00 a.m., her BAC would have been about 0.27%. *Id.* at 2-3 ¶ 7.

The jury knew that Wetsit was a heavy drinker and was drunk at the time of the incident. Common sense shows that a person who reports having "passed out for 3-4 hours" is estimating the duration of their lapse, and the duration was not significant. An alleged "psychotic," "drunken stupor," Mot. § 2255 at 10, could not explain why Brown also felt the bed moving and woke to see Adams standing in the bedroom with his pants down and his erect penis exposed.

Finally, Adams asserts that Reum's report shows that Wetsit told her "she had loss of memory and 'passed out for 3-4 hours.'" Mot. § 2255 at 9. A reasonable attorney could have concluded that asking Reum about Wetsit's claim that she drank so much that she "had loss of memory and 'passed out'" was both unnecessary and unwise. The statement was consistent with both Wetsit's trial testimony and the forensic analysis of her BAC, and it highlighted Wetsit's inability to withhold consent.

Adams' shows no defect and no prejudice in Branom's performance. All claims related to Wetsit's intoxication, as well as the time of the assault, Mot. § 2255 at 9-10, 13, 15, 17-18, 20, are denied.

### B. Claim Against Prosecution

Because Adams fails to show that any evidence presented by the prosecution was false, much less known to be so, his claim against the prosecution is denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Adams's claims border on the frivolous. Faced with two witnesses who saw Adams in Wetsit's bedroom with his pants down around his knees and his erect penis exposed, defense counsel presented a reasonable-doubt defense as well as it could have been presented. The various items of testimony and evidence Adams adduces simply do not prove or contradict what he thinks they prove or contradict. The forensic evidence, both DNA and blood-alcohol levels, corroborated Wetsit's

testimony. Adams shows neither deficient performance nor prejudice from counsel's decision to stipulate to Dr. Uphues's testimony or from Nurse Reum's testimony. The prior statements Adams claims counsel should have used for impeachment purposes either were not inconsistent, as Adams claims, or were inadmissible hearsay. The parties did not stipulate that the assault occurred at 8:00 a.m., and the jury knew that Wetsit was habitually a heavy drinker and drunk on the night in question. There are no claims on which reasonable jurists could disagree. There is no reason to encourage further proceedings. A certificate of appealability is not warranted.

**ORDERED**:

1. Adams's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (doc. 74), and his petition for DNA testing (doc. 74-3), are DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Adams files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 12-03-GF-SEH are terminated and shall close the civil file by entering judgment

in favor of the United States and against Adams.

DATED this 13th day of March, 2012.

Sam E. Haddon
United States District Court